## AARON FERER & SONS v. RICHFIELD OIL CORPORATION.

### No. 10743.

Circuit Court of Appeals, Ninth Circuit.

June 12, 1945.

Carl B. Sturzenacker and Philip N. Krasne, both of Los Angeles, Cal., for appellant.

Robert E. Paradise, William J. DeMartini, Lloyd & Paradise, all of Los Angeles, Cal., for appellee.

Before DENMAN, HEALY, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment holding appellee, hereinafter called Richfield, not liable to appellant, hereinafter called Ferer, for failing to sell to Ferer certain well casing and pipe installed in its wells on certain lands, after the court's reformation of a contract between Ferer and Richfield for the sale of certain personal property on the lands.

Ferer filed in the Superior Court of the State of California in and for the County of Los Angeles a complaint for a judgment declaring the meaning of the terms of the contract. It stated a cause of action under Section 1060 of the California Code of Civil Procedure. The case was removed to the District Court of the United States for the Southern District of California on the ground of diversity of citizenship. Ferer there amended the complaint and added a second cause of action for damages for Richfield's refusal to permit it to take the well casing and piping. Richfield sought dismissal of both counts on the ground of failure of each to state a cause of action. The district court dismissed the count for declaratory relief and refused to dismiss the second count for damages for breach of contract.

Richfield then answered the second count, raising issue as to the breach. Richfield also counter-claimed for a reformation of the contract of sale to comply with an alleged prior understanding that the well piping and casing were not included in it.

Ferer filed an affidavit denying the prior agreement and alleging the pleaded agreement was the only one made and sought a summary judgment. Richfield filed affidavits contradicting the statements of Ferer's affidavit. This created a "genuine issue as to a material fact" and hence required the usual trial by witnesses, subject to cross-examination under F.R.C.P. 52(a).[1] The district court properly denied the motion for summary judgment. Bowers v. E. J. Rose Mfg. Co., 9 Cir., 149 F.2d 611, decided April 21, 1945, as amended by order of June 1, 1945.

Trial was had upon the causes of action for the breach of contract and for reformation. The pertinent provision of the contract in question read that for a consideration of $22,000, Richfield "agrees to sell" to Ferer

" * * * subject to the exceptions hereinafter provided, all of the equipment and facilities now located on said land above described together with the pipe lines running from said land to a point adjacent to the railroad track one-half mile west of said land, and including the boiler, boiler house, two corrugated iron tanks, pump and loading rack located at said point. Said equipment and facilities so to be sold include generally all pipe lines, valves and fittings, buildings, boilers, pumps, engines, motors, tanks, metal and lumber now located on said land, all subject to the exceptions hereinafter provided. It is expressly understood and agreed that the following items of equipment and facilities located on said land above described are excepted from the foregoing and shall not be included in said sale nor shall the same be dismantled or removed by Buyer:

* * * * *

"(b) That certain water pump and the water storage facilities and water piping which services the Superintendent's house and cow barn;

"(c) Superintendent's house (PR-1494), garage (PR-1479), frame house (PR-17318), and barn (PR-1495);

"(d) Six shell stills and two extra still bottoms including connections which are affixed thereto up to and including the first flange in the piping hook-up.

"(e) Brick foundations for said stills and still bottoms.

"(f) Six tanks,
Nos. PR-29230—Capacity 55,000 barrels
29231 " 55,000 "
29238 " 5,700 "
29239 " 10,050 "
29240 " 30,190 "
29241 " 37,250 "

and major suction and discharge oil pipe lines connecting such tanks approximately as indicated in red on the map attached hereto and marked Exhibit 'A'.

* * * * * *

"(h) Gas pipe lines connecting wells on

[1] "Rule 52. Findings by the Court

"(a) Effect. In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * *." 28 U.S.C.A. following section 723c.

the land above described to the superintendent's house (PR-1494)."

The preposition "on" in the phrase of the contract of sale of the personal property "now located *on* said land" is ambiguous. It may or may not include the casing and piping beneath the surface of the land. It may mean on the surface or appertaining to the land. In this situation under Section 3399 of the Civil Code of California[2] there may be a mutual mistake as to the meaning or a mistake of one party which the other knew or suspected warranting a reformation of the contract.

Evidence was taken and the district court's judgment was that Ferer "take nothing by its action" and

"That pursuant to defendant's counterclaims the written contract between plaintiff and defendant, dated January 17, 1941, be and the same is hereby reformed by the addition of the following paragraph as paragraph 15 thereof:

"15. The subject matter of this contract does not include the casing in any of the wells located upon Seller's land and the casing in such wells is expressly excluded from the equipment and facilities to be sold by Seller to Buyer hereunder."

The findings of ultimate fact upon which the judgment is based are

"24. Throughout the negotiations antecedent to and at the time of the execution of said contract, plaintiff had both knowledge and suspicion that defendant did not intend to sell the casing in any of the wells upon the Casmalia property or to have any of said wells abandoned.

"25. The failure of the written contract dated January 17, 1941, to express truly the intention of the parties to the contract resulted from the mistake of the defendant which the plaintiff knew and suspected at the time of the execution of the contract.

"26. During the negotiations antecedent to and at the time of the execution of said contract, plaintiff did not intend to purchase under such contract the casing in the aforementioned wells or to perform the abandonment work on such wells in the manner required by law which would be necessary in connection with the removal of casing from such wells.

"27. During the negotiations antecedent to and at the time of the execution of said contract, defendant did not intend to assume any obligation to the plaintiff under such contract to perform the abandonment work on the aforementioned wells in the manner required by law and did not understand or consider that it would have any such obligation.

"28. The failure of the written contract dated January 17, 1941, to express truly the intention of the parties to the contract resulted from a mutual mistake of the parties thereto."

We hold that there was ample evidence to sustain the judgment and the findings supporting it. It appears that the wells were producing from stratifications of low gravity oil, not then profitable to extract. However, with a view to its likely ultimate increase in volume, the large oil tanks were by the contract excepted from the sale of other equipment "*on* said land" of the oil fields as also the superintendent's house and the piping connections from the wells to his house. Such a reservation is inconsistent with the abandonment of the wells, with their piping and casing "in" the ground beneath the surface of the fields.

There is evidence that Richfield's employees told Ferer that the equipment to be sold was "surface equipment;" that the six large tanks "were not to be sold because the production department wanted to retain them for storage purposes in the event the wells were reopened."

It further appears that Ferer knew, before the signing of the contract, that the wells had been "capped at the surface in order that they might in the future be opened and re-entered for the production of oil therefrom." If the wells were to be abandoned, instead of closing them by capping, they would have been left open for the extensive operation of sealing off the oil stratifications by cementing outside and inside the casing to prevent the flow of water from other strata into the oil sands or the impregnation of irrigation water with deleterious matter. This is often an

---

[2] "3399. When contract may be revised. When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

expensive process required by the California Public Resources Code, sections 3228 to 3236, St.1939, pp. 1124–1127.

The above evidence in connection with the consideration of the provisions of the contract regarding the capping of the wells, retention of the tanks and the ambiguity of the preposition "on", not only warrant inferences supporting the findings and judgment but seem to require the reformation.

 Ferer also contends that the district court erred in dismissing the first count of the complaint seeking a declaratory judgment. Such, if error, was harmless, since the issue there presented was decided on the trial of the second count and counterclaim.

The judgment appealed from is Affirmed.